**WO**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,                )  | No. CV-08-0168-PHX-GMS (MEA) |
| )  | CR-05-0281-PHX-GMS |
| Plaintiff/Respondent,            )  |  |
| )  | **ORDER** |
| v.                                                 )  |  |
| )  |  |
| Roberto Rivas Castillo,                   )  |  |
| )  |  |
| Defendant/Movant.               )  |  |
| )  |  |

Pending before the Court is the Motion to Vacate, Set Aside or Correct Sentence of Movant Roberto Rivas Castillo, pursuant to 28 U.S.C. § 2255. (Dkt. # 1.)[1] On March 27, 2008, Magistrate Judge Mark E. Aspey issued a Report and Recommendation ("R & R") recommending that the motion be denied and dismissed with prejudice. (Dkt. # 4.) Movant timely filed objections. (Dkt. # 5.)   For the following reasons, the Court denies Movant's motion and adopts the R & R of Magistrate Aspey.

**BACKGROUND**

On February 1, 2006, Movant was found guilty of attempted illegal reentry after

---

[1]The docket number citations in this order refer to the docket numbers in the CM/ECF civil case – CV-08-0168-PHX-GMS (MEA).

deportation. On July 18, 2006, Movant was sentenced to seventy months imprisonment. The R & R sets forth the factual and procedural background of this case, to which neither party objected. Accordingly, the Court adopts this background as an accurate recital.

In his § 2255 action, Movant asserts he was denied his right to the effective assistance of both trial counsel and appellate counsel. (Dkt. # 1.) The Magistrate Judge recommended that the motion be dismissed with prejudice.

## STANDARD OF REVIEW

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). It is "clear that the district judge must review the magistrate judge's findings and recommendations *de novo if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*) (emphasis in original); *Schmidt v. Johnstone*, 263 F. Supp. 2d 1219, 1226 (D. Ariz. 2003) ("Following *Reyna-Tapia*, this Court concludes that *de novo* review of factual and legal issues is required if objections are made, 'but not otherwise.'"). District courts are not required to conduct "any review at all . . . of any issue that is not the subject of objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *see also* 28 U.S.C. § 636(b)(1) ("[T]he court shall make a de novo determination of those portions of the [R & R] to which objection is made.").

## DISCUSSION

Movant's objections to the R & R include two substantive disputes with the Magistrate's analysis. First, Movant objects to the Magistrate's failure to consider the attorney-client privilege when recommending the dismissal of Movant's first ineffective

- 2 -

assistance claim.  (Dkt. # 5, at 1.)  Second, Movant objects to the Magistrate's failure to consider the *Ex Post Facto* Clause of the Constitution when recommending the dismissal of Movant's second ineffective assistance claim.  (*Id.* at 6-8.)  Having conducted a *de novo* review of the record on these matters, the Court will address Movant's objections.

## I.   Attorney-Client Privilege Objection

In his reply brief, Movant argues that his "[t]rial counsel's actions violated [his] attorney-client privilege, resulting in [his] convict[tion] in violation of due process of law." (CR-05-0281 Dkt. # 140, at 3.)  Movant's position is that his trial counsel's disclosure to the Government of the fact that Movant was under constant surveillance prior to his arrest on March 8, 2005, violated his attorney-client privilege.  (*Id.*)  Movant's reliance on the attorney-client privilege is misplaced.

"The attorney-client privilege is an evidentiary rule designed to prevent the forced disclosure in a judicial proceeding of certain confidential communications between a client and a lawyer."  *United States v. Rogers*, 751 F.2d 1074, 1077 (9th Cir. 1985).  "'The attorney-client privilege is a testimonial privilege.  Consequently, so long as no evidence stemming from the breach of the privilege is introduced at trial, no prejudice results.'" *Bittaker v. Woodford*, 331 F.3d 715, 732 (9th Cir. 2003) (quoting *United States v. White*, 970 F.2d 328, 336 (7th Cir. 1992)).

This privilege is not applicable to the circumstances set forth by Movant.  First, even if Movant's counsel disclosed confidential communications to the Government, Movant makes no showing that these communications were introduced at trial.  If anything, the disclosure only prompted the Government to re-evaluate its case against Movant.  As the

Magistrate noted, "Pre-trial discussions between the prosecution and the defense are an accepted criminal defense practice. Competent counsel do regularly indicate to opposing counsel the strengths of their defenses in order, for example, to achieve a more favorable plea agreement for their client." (Dkt. # 4, at 11.) Strategic decisions, such as pre-trial negotiations and discussions of potential defenses, do not implicate the attorney-client privilege unless the unauthorized disclosure of confidential communications are subsequently used at trial. This was not the case here.

Alternatively, the Magistrate found, and the Court agrees, that "the government knew of the factual circumstances regarding any surveillance or lack thereof well before the time defense counsel allegedly 'disclosed' its defense theory." (Dkt. # 4, at 12.) The attorney-client privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981). This distinction is made clear in *Upjohn*:

> [T]he protection of the privilege extends only to *communications* and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.

*Id.* at 395-96 (quoting *Philadelphia v. Westinghouse Elec. Corp.,* 205 F. Supp. 830, 831 (D. Pa. 1962)).

Movant's allegations of an attorney-client privilege violation stem from his trial counsel's disclosure of the constant surveillance defense and plans to employ the defense at trial.

- 4 -

There is no allegation that Movant's counsel disclosed any confidential communications, but rather only disclosed the facts surrounding the constant surveillance defense and their intent to use the defense at trial. These disclosures are not violations of the attorney-client privilege, as Movant does not allege that his counsel discussed more than just facts and defenses with the Government. In hindsight, Movant may be disappointed in the result of his counsel's actions, but such actions do not implicate the protections of the attorney-client privilege. Thus, the Court agrees with the analysis and conclusions of the Magistrate.

**II.     *Ex Post Facto* Clause Objection**

Movant disputes the Magistrate's analysis and conclusion regarding whether Movant's appellate counsel was ineffective for failing to raise, on direct appeal, an argument directed at the validity of the second superseding indictment. Specifically, Movant contends that his appellate counsel should have argued that the second superseding indictment was invalid because the predicate prior order of removal was reinstated by an immigration officer rather than an immigration judge. (Dkt. # 5, at 2-3.) The Magistrate concluded that Movant was not prejudiced by the failure because the case supporting Movant's position had been vacated at the time of his direct appeal, and therefore invocation of that case as precedent would have been meritless. (Dkt. # 4, at 13.) Movant disagrees, arguing that the *Ex Post Facto* Clause of the Constitution would have required the appellate court to give precedential value to the vacated case because the case had not been vacated at the time Movant committed the crime. (Dkt. # 5, at 2.)

Article I of the United States Constitution provides that neither Congress nor any State shall pass any "ex post facto Law." *See* U.S. Const. art. I, § 9, cl. 3; art. I, § 10, cl. 1. These

clauses of the Constitution, by their terms, do not include the judiciary, "and the Supreme Court has never extended the *Ex Post Facto* clauses to judicial acts." *Webster v. Woodford*, 369 F.3d 1062, 1066 (9th Cir. 2004). Despite this, the Supreme Court has extended similar principles to the Due Process Clause to cover "unforeseeable [judicial] construction of a criminal statute."[2] *Bouie v. City of Columbia*, 378 U.S. 347, 354-55 (1964). *Bouie* held that the deprivation of the right of fair warning can result . . . from an unforeseeable and retroactive judicial expansion of narrow and precise statutory language. *Id.* at 352; *see also Clark v. Brown*, 450 F.3d 898, 911 (9th Cir. 2006) ("An unforeseeable judicial enlargement of a criminal statute, applied retroactively, violates the federal due process right to fair warning of what constitutes criminal conduct."). The principle underlying both *Bouie* and *Clark* is that "due process forbids the imposition of criminal penalties against a defendant who had no fair warning that his conduct violated the law." *Darnell v. Swinney*, 823 F.2d 299, 301 (9th Cir. 1987) (citing *Marks v. United States*, 430 U.S. 188, 191-92 (1977)); *see also Bouie*, 378 U.S. at 352 ("'The . . . principle is that no man should be held criminally responsible for conduct which he could not reasonably understand to be proscribed.'") (quoting *United States v. Harriss*, 347 U.S. 612, 617 (1954)).

In the present case, it is doubtful whether the *Bouie* due process principle of fair notice has any application, as this case does not present a "judicial enlargement of a criminal statute," *Clark*, 450 F.3d at 911, or a "judicial expansion of narrow and precise statutory

---

[2] Even under the *Ex Post Facto* Clause, Movant's argument is unpersuasive. "'The [*Ex Post Facto* Clause] was intended to secure substantial personal rights against arbitrary and oppressive legislation, and not to limit the legislative control of remedies and modes of procedure which do not affect matters of substance.'" *Dobbert v. Florida*, 432 U.S. 282, 293 (1977) (quoting *Beazell v. Ohio*, 269 U.S. 167, 171 (1925)).

- 6 -

language." *Bouie*, 378 U.S. at 352.  Movant clearly had fair warning that his conduct – attempted illegal reentry – was criminal as he had been deported for similar conduct on two prior occasions.  Nothing in the Ninth Circuit's vacating of *Morales-Izquierdo v. Ashcroft*, 388 F.3d 1299 (9th Cir. 2004), expanded or enlarged the attempted illegal reentry criminal statute (8 U.S.C. §1326(a)) as it existed at the time Movant committed the crime.  Therefore, because no threat to due process or *ex post facto* application of the law arose, the Court finds that *Bouie* is simply not applicable here.

However, even if it is assumed that the Ninth Circuit's vacating of a judicial opinion favorable to Movant enlarged or expanded the law of attempted illegal reentry, Movant has failed to show that this change unfairly surprised him in a way that affected his legal defense.  It was certainly not unforeseeable that Movant's conduct was criminal at the time Movant entered the United States on March 8, 2005.  Movant had been deported on two previous occasions – March 7, 1992 and April 23, 1999.  Movant's second deportation was executed under 1992 order of deportation that was reinstated by an immigration officer pursuant to 8 C.F.R. § 241.8, which had been implemented in 1997.  At that time, the Ninth Circuit had not held 8 C.F.R. § 241.8 invalid in any manner.  It was not until November 18, 2004, that the Ninth Circuit issued its opinion in *Morales-Izquierdo*, 388 F.3d 1299, holding 8 C.F.R. § 241.8 invalid.  Coincidentally, on September 14, 2004, the First Circuit issued its opinion in *Lattab v. Ashcroft*, 384 F.3d 8 (1st Cir. 2004), holding 8 C.F.R. § 241.8 entirely valid.  Therefore, on March 8, 2005, when Movant was arrested for what resulted in his current conviction for attempted illegal reentry, the validity of 8 C.F.R. § 241.8 was in dispute as conflict existed between two circuits and the remaining circuits had yet to address the

question. Given this backdrop, Movant's contention that fair warning was lacking such that the Due Process and *Ex Post Facto* Clauses would be implicated is unreasonable. The idea that Movant re-entered the United States under the assumption that he could not be prosecuted for attempted illegal reentry because his prior 1999 order of deportation was re-instated by an immigration official and not an immigration judge is unreasonable and rather unbelievable. Therefore, even if Movant established his reliance, at the time of his 2005 reentry, upon *Morales-Izquierdo*, 388 F.3d 1299, it would be unavailing because it was foreseeable that the Ninth Circuit would review its holding given the untested position[3] it had taken and given the circuit conflict that existed at the time.

The Court therefore finds that Movant's appellate counsel would not have prevailed in arguing *Morales-Izquierdo*, 388 F.3d 1299 while his case was on appeal. Not only had the initial *Morales-Izquierdo* opinion been vacated at the time of Movant's appeal, it had also been vacated prior to October 25, 2005 – the date on which the second superseding indictment was handed down. Accordingly, "Movant was not prejudiced by any alleged failure of his appellate counsel to raise this argument." (Dkt. # 4, at 14.)

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that the Report and Recommendation (Dkt. # 4) is **ADOPTED**.

**IT IS FURTHER ORDERED** that Movant's motion to vacate, set aside, or correct

---

[3] Except for the First Circuit, no other Circuit had addressed the issue at the time the Ninth Circuit decided *Morales-Izquierdo*, 388 F.3d 1299.

sentence pursuant to 28 U.S.C. § 2255 (Dkt. # 1) is **DENIED** and **DISMISSED WITH PREJUDICE**.

DATED this 15th day of October, 2008.

*/s/ G. Murray Snow*
G. Murray Snow
United States District Judge